## In re ZIEBOLD.[1]

### (Circuit Court, D. Kansas. May 14, 1885.)

CONSTITUTIONAL LAW — "DUE PROCESS OF LAW" — KANSAS ACT OF MARCH 7, 1885—HABEAS CORPUS.

> A person imprisoned for refusing to appear or testify before a county attorney in a proceeding under the eighth section of the act of the legislature of Kansas, approved March 7, 1885, being an act amendatory of the act prohibiting the manufacture and sale of intoxicating liquor, is restrained of his liberty without "due process of law," within the meaning of the fourteenth amendment to the constitution of the United States, and entitled to be released on *habeas corpus* issued by the United States circuit court.

The petitioner was committed to jail for refusing to testify before the county attorney, and sued out a writ of *habeas corpus*. Further facts appear in the opinion.

*B. P. Waggener* and *Thomas P. Fenlon*, for petitioner.

*W. D. Gilbert*, Co. Atty., for the State.

FOSTER, J. The petitioner in this case alleges that he is imprisoned and deprived of his liberty, in violation of the provisions of the fourteenth amendment to the constitution of the United States. That amendment provides, among other things, that no state shall deprive any person of life, liberty, or property without "due process of law."

The federal courts and judges are authorized, among other causes, to issue the writ of *habeas corpus* for a person in custody and imprisoned in violation of the constitution, or of a law or treaty of the United States. Rev. St. § 753. The jurisdiction of this court to issue the writ and hear the case depends upon the truth of the averments in the petition, and therefore the jurisdiction of this court and the main question are so inseparably connected together that the determination of one must determine the other. It appears from the petition and the return to the writ that the petitioner is held in custody and imprisoned by the sheriff of Atchison county by virtue of a commitment issued to him by the county attorney, committing the petitioner to the county jail for refusing to obey a subpœna issued by said attorney, and refusing to be sworn and give testimony before him in proceedings under the eighth section of the act of the legislature of Kansas, approved March 7, 1885, being an act amendatory to the act prohibiting the manufacture and sale of intoxicating liquors, etc. It is admitted that the county attorney acted and proceeded in accordance with the provisions of the law; and the question is fairly presented whether a person imprisoned for refusing to appear or testify before the county attorney in such proceedings is restrained of his liberty without "due process of law," within the meaning of the constitution of the United States.

The first matter of inquiry is the meaning of the term "due process of law." If it has no broader meaning than process prescribed by act of the legislature, it is the end of the case. But such a construc-

[1] Reported by Robertson Howard, Esq., of the St. Paul bar.

tion would render the constitutional guaranty mere nonsense, for it would then mean no state shall deprive a person of life, liberty, or property, unless the state shall chose to do so. It has repeatedly and uniformly been adjudicated that the terms "due process of law" and "law of the land" have a broad and comprehensive meaning, and originated in that great bill of rights, *Magna Charta*, and operate as a restriction on each branch of civil government. *Murray's Lessee* v. *Hoboken Land Co.* 18 How. 272; *Davidson* v. *New Orleans*, 96 U. S. 107; *Ex parte Virginia*, 100 U. S. 346. In the last-cited case the court, speaking of these words in the constitution, says:

"They have reference to the actions of a political body denominated a state, by whatever instruments or in whatever modes that action may be taken. A state acts by its legislative, its executive, or its judicial authorities. It can act in no other way. The constitutional provisions, therefore, must mean that no agency of a state, or of the officers or agents by whom its powers are executed, shall deny to any person within its jurisdiction the equal protection of the laws. Whoever by virtue of a public position under a state government deprives another of property, life, or liberty, without due process of law, violates * * * the constitutional inhibition, and, as he acts in the name of and for the state, and is clothed with the state's power, his act is that of the state. This must be so, or the constitutional provision has no meaning."

These words in the constitution have been defined in various terms by different courts, but all the definitions tend to the same general idea. Mr. Justice EDWARDS has said in one case:

"Due process of law undoubtedly means in the due course of legal proceedings, according to those rules and forms which have been established for the protection of private rights." *Westervelt* v. *Gregg*, 12 N. Y. 209.

Mr. Justice JOHNSON, of the supreme court of the United States, says:

"As to the words from *Magna Charta*, incorporated in the constitution of Maryland, after volumes spoken and written with a view to their exposition, the good sense of mankind has at last settled down to this: That they were intended to secure the individual from the arbitrary exercise of the power of government, unrestrained by the established principles of private rights and distributive justice." *Bank of Columbia* v. *Okely*, 4 Wheat. 235.

This definition has been several times approved by that court. *U. S.* v. *Cruikshank*, 92 U. S. 554; *Hurtado* v. *California*, 110 U. S. 527; S. C. 4 Sup. Ct. Rep. 111.

Judge COOLEY says:

"Due process of law in each particular case means such an exertion of the powers of government as the settled maxims of law permit and sanction, and under such safeguards for the protection of individual rights as those maxims prescribe for the class of cases to which the one in question belongs." Cooley, Const. Lim. 356; *Wynehamer* v. *People*, 13 N. Y. 432; *Taylor* v. *Porter*, 4 Hill, 145.

With this general principle established, and the meaning of those words defined, the difficulty remains of applying the principle to any particular case. In the case of *Hurtado* v. *California, supra,* Mr. Justice MATTHEWS, in a very learned and exhaustive opinion, speak-

ing for the court, (Mr. Justice HARLAN dissenting,) held that the words "due process of law," in this amendment, do not necessarily require an indictment by a grand jury in a prosecution by a state for murder; and in *Munn* v. *Illinois*, 94 U. S. 115, the chief justice says:

"A person has no property, no vested interest, in any rule of the common law. That is only one of the forms of the municipal law, and is no more sacred than any other. * * The law itself, as a rule of conduct, may be changed at the will or even the mere whim of the legislature, unless prevented by constitutional limitations."

And in *Walker* v. *Sauvinet*, 92 U. S. 90, the court held that this amendment did not guaranty the right of trial by jury in all cases in the state courts. These cases tend to establish the doctrine that the rules and forms known to the common law, in judicial proceedings not affecting the ultimate rights of the party, are not necessarily guarantied to a person under the constitution, and it has long been established that the remedial process of the law may be altered at the will of the legislature, so it does not impair a vested right, or cut off the remedy altogether. The words "due process of law," then, must be directed at something deeper than the mere rules and forms by which courts administer the law. They evidently were intended to guaranty and protect some real and substantial right to life, liberty, and property as the ultimate result, and probably to prohibit any arbitrary and oppressive proceedings by which the individual is deprived of either. There are certain things that are manifestly obnoxious to this provision. For instance, the property of one person cannot be taken from him for private use and given to another, even though he is compensated for it, and is given every opportunity to be heard through all the forms and solemnity of judicial proceedings. *Taylor* v. *Porter*, 4 Hill, 149; Cooley, Const. Lim. 357. Nor can a person be condemned without an opportunity to be heard and make his defense, although he may be guilty. When we go beyond a few well-defined landmarks in this direction, we are upon a broad sea of uncertainty. In any case, we have to inquire if the person is imprisoned in violation of a due course of legal proceedings, according to those settled maxims, rules, and forms established for the protection of private rights against the arbitrary exercise of power, unrestricted by established principles applicable to such rights, and to the administration of justice.

By section 1, art. 3, of the constitution of Kansas, the judicial power of the state shall be vested in certain courts therein named, and such other courts, inferior to the supreme court, as may be provided by law. Undoubtedly the legislature has the constitutional right to establish inferior courts, and define and limit their jurisdiction, powers, and proceedings. Judicial powers may be conferred without expressly naming the tribunal a court, and these powers may be confined to one or more subjects of adjudication. They may be very limited or very extensive in their scope, and I am not prepared

to say that a ministerial officer may not be selected to perform these judicial functions. The coroner of a county has both ministerial and judicial duties to perform. County commissioners have to some extent both duties imposed on them, and probably the same is true of a sheriff of a county. That the duties imposed on the county attorney under the eighth section of the act in controversy are judicial powers must be admitted. He is to hear and determine, compel the attendance of witnesses by subpœna and attachment, and to punish them for disobedience to his writs. The power of courts acting within their jurisdiction to punish witnesses for contempt is a necessary and admitted power. It goes with the judicial attribute, and without it a court is powerless to enforce its orders or protect its dignity. The serious objection urged to the law under consideration is that the county attorney is the public prosecutor for the state. He is the informer against offenders, and on his information parties charged with crime are put upon trial. The judicial powers conferred on him by this law are not to hear and determine matters in which he stands indifferent between the parties, but are given to aid and assist him in the performance of his ministerial duties, and have no other purpose, making the judicial powers auxiliary and subordinate to the ministerial duties, and are given to him as a means by which he can more successfully procure evidence to institute and carry on prosecutions; and in this respect the powers given him are very great, and in the hands of an unscrupulous man, stimulated by animosity or avarice, could be used as an instrument of sore oppression.

On the mere unsworn statement of any person, and without any case pending before him, it is made his duty, under severe penalties, to set this judicial machinery in motion, with no restriction as to whom he shall summon before him to testify, and no limitation but his own good will as to the scope of his investigation; fortified by a power to exact answers to any questions he sees proper to ask, almost despotic in its severity. The witness must answer the questions, or go to jail for contempt. It may be answered that such is the case in all trials, but there is this wide difference: In trials in open court on issues made up between the parties, the relevancy and competency of the question is submitted to the court, and argument of counsel is heard; the rights of the witness, as well as the party, are discussed, considered, and decided. And what makes the power given by this law still more dangerous and objectionable, is that the law makes it to the interest of the judge (county attorney) to find evidence of an offense committed. He is offered a reward to excite his vigilance and cupidity, and threatened with severe punishment if he fails or neglects to faithfully perform these duties. In some respects these duties are similar to those of a grand jury and court combined. The proceedings are preliminary, to ascertain if there is probable cause to charge the party with the offense. But a grand juror may be challenged on the ground that he is prosecutor or complainant or

a witness upon a charge coming before him for investigation. St. 1879, p. 842, § 79. Nor can a grand jury issue a subpœna for a witness, or decide the competency of a question asked, or punish for contempt. These matters rest with the court. Sections 85–88. This provision of the act of March 7, 1885, is a strange combination of judicial and ministerial duties, aided with rewards and penalties, and, so far as I have been able to ascertain, is an anomaly to all the judicial proceedings known to the land: It attempts to unite the judicial with the executive branch of civil government; and when the law-making power and the power which declares and applies, as well as that which executes and administers the law, are united and vested in one person or body, it becomes a despotic and not a constitutional government.

Are these objections sufficient to justify a court in the conclusion that a person restricted of his liberty under these proceedings is deprived of his liberty without "due process of law?" I am compelled to answer in the affirmative. I believe no precedent can be found for the application and use of judicial power in the manner and for the purpose contemplated by this act, and that it is a dangerous innovation on the fixed maxims and rules in the administration of justice, established for the protection of private rights. In this conclusion I am also sustained by a recent decision of Judge CROZIER, of the First judicial district of this state. *In re Beller,* 1 Kan. Law J. 229.

It is therefore ordered that the petitioner be discharged from custody.