## No. 9823.

## PEOPLE v. MAX.

Decided April 4, 1921.   Rehearing denied May 2, 1921.

Information against defendant in error for practicing medicine without a license.   Motion to quash and demurrer sustained.

## *Reversed.*

1. CONSTITUTIONAL LAW—*Jurisdiction of Trial Courts.* The provision of amended sec. 1, art. 6 of the state Constitution, S. L. 1913, p. 678, that only the supreme court shall have jurisdiction to declare laws unconstitutional, held void in so far as it deprives trial courts of jurisdiction over federal and state constitutional questions.

2. *Construction—Divisibility of Constitutional Provisions.* The rule as to divisibility of a constitutional provision, a portion of which is held void, is the same as that applied to a statute under similar conditions: where a separation can not be made and the invalid portion completely detached and treated as independent, the whole act must be pronounced void.

3. *Due Process of Law.* A state constitutional provision prohibiting trial courts from passing on constitutional questions, takes from a defendant the right of interposing the defense that the act under which he is prosecuted is unconstitutional, and is invalid as violating the "due process of law" clause.

4. WORDS AND PHRASES—*"Due Process of Law,"* construed.

5. RECALL—*Supreme Court Decisions on Constitutional Questions.* All those provisions of amended sec. 1, art. 6 of the state Constitution, S. L. 1913, p. 678, which purport to furnish a plan and machinery for the nullification of decisions of the supreme court holding state laws and city charters contrary to the state Constitution, are null and void.

6. CONSTITUTIONAL LAW—*Title of Act—Practice of Medicine.* The title: "An Act Relating to the Practice of Medicine in the State of Colorado," held sufficient to embrace the subjects included in chapter 94, S. L. 1917, p. 353, and not in violation of

sec. 1. art. 5, of the state Constitution concerning the title of legislative acts.

7. WORDS AND PHRASES—*Practice of Medicine.* "Medicine" defined.

*Error to the District Court of the City and County of Denver, Hon. Henry J. Hersey, Judge.*

Mr. WILLIAM E. FOLEY, district attorney, Mr. T. E. MC-INTYRE, assistant, for the people.

Mr. JOHN T. BOTTOM, Mr. JOHN M. WALDRON, for defendant in error.

Mr. T. J. O'DONNELL, Messrs. MELVILLE, MELVILLE & WALTON, Mr. HORACE N. HAWKINS, Mr. THOMAS H. GIBSON, Mr. HARVEY RIDDELL, *Amici curiae.*

*En banc.*

MR. JUSTICE BURKE delivered the opinion of the court.

IN this cause an information was filed against defendant charging him with unlawfully "diagnosing and treating diseases, injuries and defects of human beings" without a license, in violation of chapter 94, S. L. 1917, p. 353. To this information defendant filed a motion to quash and demurrer, on the ground that said chapter 94 was unconstitutional, as in violation of certain sections of the state and federal Constitutions, and questioning the jurisdiction of the court to consider the same under the prohibition of section 1, art. VI of the State Constitution. The district attorney thereupon objected to the court's consideration of said questions save to overrule defendant's demurrer. Upon hearing the court sustained the motion and demurrer and entered final judgment dismissing the case and discharging the defendant. From that judgment the people bring this cause here for review on error under the mandate of section 1997, R. S. 1908.

We desire here to express our very great appreciation of the aid given us by the able and exhaustive briefs filed in these cases by *amici curiae.*

For the purpose of determining the legal question involved this is a companion case to No. 9522, *People v. W. U. Tel. Co. et al.,* (198 Pac. 146) this day decided here. Although there is no connection between the two, a careful examination of the opinion in that case is essential to a full understanding of what is hereinafter said. Portions of section 1, art. VI and section 8, art. XII of the Constitution of Colorado, and paragraph 2 of art. VI of the United States Constitution are therein quoted and will not be repeated here. Said section 1, prohibits all the courts of this state, except the supreme court, from passing upon certain state and federal constitutional questions. Its validity as to such federal questions is denied in said cause No. 9522. That decision disposes of the issue here, so far as the federal Constitution is concerned, and it will not be further discussed.

There is incorporated in the record before us an "opinion" of the trial judge from which it appears that having found the state and federal Constitutions in direct conflict as to his power and duty he held that his oath of office, applied thereto, resulted in judicial paralysis. In this he was in error. The limit of a court's jurisdiction under a written constitution cannot be determined until the court first ascertains what is and what is not that constitution. Had the trial judge taken this first step before contemplating the second the difficulty would have been obviated.

It is said here that as the lower court dismissed this cause without passing upon the issue raised there is nothing before us to review, and that, having no original jurisdiction in the matter, the writ must be dismissed. If so the most momentous question that can be raised under our system of jurisprudence can never be determined. The fallacy of the proposition is too apparent for discussion.

However, it is from the "opinion" only that counsel conclude that the questions were not decided. The judgment itself recites that the court "doth sustain said motion to quash and demurrer." The statute, section 1997, R. S. 1908, provides that "writs of error shall lie on behalf of

the state, or the people, to review decisions of the trial court in any criminal case upon questions of law arising upon * * * motions to quash, demurrers," etc. This *is* a writ of error in a criminal case to review a decision of the trial court arising upon a motion to quash and a demurrer.

The diverse views of judges of the same court, as evidenced by this judgment and that rendered below in No. 9522, but emphasizes the imperative duty resting upon us as pointed out in the opinion in that case. In the "opinion" of the trial judge here it is well said: "No relief can be expected until the supreme court of this state realizes the anomalous position in which this provision (section 1, art. VI) of the Constitution places the judges of the district court."

Irrespective of whether this cause is now before us on review or under our original jurisdiction, or neither, it is here in such a condition and under such circumstances, and the necessity is such, that by virtue of section 2, art. VI of the Colorado Constitution, vesting in the supreme court "a general superintending control over all inferior courts," we have the right, and it is our duty, to dispose of it.

The question first to be determined is: Had the trial court in the instant case the right, and was it its duty to decide the state constitutional question raised by the motion to quash and demurrer to the information? Having held a section of our constitution null and void as to federal constitutional questions, we have first to determine whether or not said section is divisible so that it may still be upheld and enforced as to state constitutional questions.

The language of the section as it applies to both state and federal Constitutions prohibits the courts from adjudicating any of the laws mentioned "as in violation of the Constitution of this state or of the United States; provided that before such decision (i. e., of the state supreme court holding an act to be in violation of *either* constitution) shall be binding it shall be subject to approval or disapproval by the people. * * * If it concerns a state

law (i. e., holds a state law to be contrary to *either* constitution) it shall not be binding until sixty days after such date. Within said sixty days a referendum petition" etc. "All such laws (i. e., laws held contrary to *either* constitution) or parts thereof submitted as herein provided when approved by a majority of the votes cast thereon at such election shall be and become the law of this state notwithstanding the decision of the supreme court" (hence, notwithstanding they do in fact violate *either* state or federal Constitution *or both*). Next follows a similar provision, as set forth in No. 9522, for the recall of decisions declaring city charter provisions of Home Rule cities contrary to state *or* federal Constitution. No distinction is anywhere made in said section between decisions holding legislation contrary to the federal Constitution and those holding such legislation contrary to the state Constitution.

It thus appears that in all particulars in which this section is held void in the opinion in cause No. 9522 no distinction is made between the two classes of decisions and no portion of the section relating to that subject can be held to have been considered by the voters as standing alone or to have been treated as independent. It is inconceivable that the people of Colorado would ever have enacted this law had they realized that in no event could it ever be applied further than to their own constitution, or that they would ever have considered the advisibility of taking from their own courts the power to construe their own constitution had they realized that while the Constitution of the United States stands they were impotent to deprive those same courts of power to construe that charter. The rule as to the divisibility of a constitutional provision, a portion of which is held void, is the same as that applied to a statute under similar conditions.

"Where a separation can not be made, and the invalid provision completely detached and treated as independent, the whole act must be pronounced void." *Griffin v. State, ex rel., etc.*, 119 Ind. 520, 22 N. E. 7.

That portion of the section is therefore indivisible and a part of it having fallen it must all fall.

It is hence apparent that, for the simple reason that said section 1 is invalid as to federal constitutional questions and is indivisible, it is likewise invalid as to state constitutional questions, and the trial court had the power and it was its duty to adjudicate the questions presented.

. Moreover said section is invalid because it deprives the defendant of "due process of law." .That such a result ensues when one is prosecuted under an unconstitutional. statute and *all* the courts are deprived of authority to entertain his defense is too clear to admit of discussion. If the prohibition of this section, so far as it relates to trial courts construing the state Constitution, be upheld, where may the defense of the unconstitutionality of the statute be adjudicated? Not in the trial court, for that is prohibited. Not in the supreme court under its appellate jurisdiction, if the trial court was without jurisdiction, for there is then nothing to be reviewed. Not in the supreme court under its original jurisdiction unless such jurisdiction is conferred by the section itself. Section 2 of art. VI of the state Constitution provides that, "The supreme court, except as otherwise provided in this constitution, shall have appellate jurisdiction only„" and it is not "otherwise provided in this constitution" unless in said section under consideration.

It seems to be the position of the district attorney that the language of said section, "None of said courts except the supreme court shall have any power to declare or adjudicate any law of this state or city charter or amendment thereto  *  *  *   as in violation of the constitution of this state or of the United States" is a mandate to all inferior courts to hold all such legislation constitutional. The language itself justifies that interpretation and we are wholly without the guidance of judicial precedent for the very good reason that no such anomalous provision has, so far as we are able to determine, ever before found its way into a written constitution. If that interpretation be

correct then the provision has thereby committed suicide. It is the pronouncement of a judgment by a constitution instead of by a court. It is an order to trial courts so to decide. It is the declaration of that instrument that, for the purpose of trials in *nisi prius* courts, all such legislation is, by conclusion of law, constitutional. *McNealy v. Gregory,* 13 Fla. 417.

By Chap. 121, S. L. 1913, this court is given power to "prescribe rules of practice and procedure in all courts of record," and it is contended that under that statute it now devolves upon us to provide a method of determining those state constitutional questions covered by the provisions of said section 1 of art. VI. If the proposition were otherwise tenable it is disposed of by the fact that said section furnishes no basis therefor, in that it does not provide whether our jurisdiction in the matter be original or appellate. That question must be settled by the constitution itself which has removed it from the realm of "rules of practice and procedure." For these reasons said section 1 of art. VI of the state Constitution is void as in violation of the "due process of law" clause of the federal Constitution.

.Again, said section deprives the defendant of due process of law because, even if a method be discoverable by which it may be enforced, it deprives him of a tribunal in which his cause may be adjudicated and *all* his defenses to the charge heard and determined.

If the denial of power in the trial court to hold a law unconstitutional be interpreted as a denial also of its power to hold it constitutional, a denial of power to hear and adjudicate the question at all, then one who raises a constitutional question thereby ousts the court of jurisdiction. His cause can never be heard and "due process of law" is denied him.

"Jurisdiction has been defined as: * * *; the power to hear and determine issues of law and of fact; * * * the power and authority to declare the law; * * * the authority to judge or to declare the law between parties

brought into court; * * *." 15 C. J. p. 723, Sec. 13.

"As jurisdiction is the right to adjudicate concerning the subject-matter of a given case, loss of jurisdiction may result when the power of the court is terminated or the subject-matter destroyed or withdrawn." 7 R. C. L. p. 1045, Sec. 79.

"Upon determining that it has no jurisdiction the court may not only refuse to proceed further and determine other objections or the rights of the parties, but it is also improper to decide upon the sufficiency of other matters of defense, and a judgment of dismissal for want of jurisdiction or without prejudice should be entered, after which the court has no authority to proceed." 15 C. J. p. 854, Sec. 176.

Jurisdiction is invoked by the allegations of an information, petition, or complaint, but, if prior to final judgment, a matter arises judicially which discloses that the apparent jurisdiction of the court no longer exists the action should be dismissed for want of jurisdiction or transferred to a tribunal having such jurisdiction. *D. W. & P. Ry. Co. v. Church,* 7 Colo. 143, 2 Pac. 218.

It is therefore apparent that if the trial court in the instant case was without power to decide the constitutional question raised, one way or the other, it could only dismiss the cause because no other court existed in which it could be tried.

If the denial of power in the trial court to hold a law unconstitutional was in fact a command to hold it constitutional then the defendant was denied due process of law because the court could not entertain his defense, however valid it might otherwise be, and said section 1, is in itself a preadjudication of every case involving a constitutional question. The amendment might with equal force have provided that in every trial involving the commission of a criminal offense a defendant who objected to the constitutionality of the act under which he was prosecuted should be thereupon adjudged guilty by the trial court.

In construing the phrase "due process of law" the Federal courts have held that:

"Due process must, in the language of Mr. Webster, be, according to his familiar definition, the general law, or law which hears before it condemns, and which proceeds upon inquiry and renders judgment. *Ex parte Riggins,* 134 Fed. 404, 418.

"Due process of law" affords a hearing before it condemns, and gives judgment only after trial. *Ong Chang Wing v. United States,* 218 U. S. 272, 280, 31 Sup. Ct. 15, 54 L. Ed. 1040.

"Due process of law," as applied to the acts of the government in interfering with the title or enjoyment of a person's property, must be tested by those principles of civil liberty and constitutional protection which have become established in our system of laws, and not generally by the rules that pertain to the forms of procedure merely. "In judicial proceedings the law of the land requires a hearing before condemnation." *Chambers v. Gilbert,* 17 Tex. Civ. App. 106, 109, 42 S. W. 630.

It is evident that the term "due process of law," within the meaning of the Constitution of the United States, has a broader meaning than the process prescribed by act of the legislature.

"Such a construction would render the constitutional guaranty mere nonsense, for it would then mean no state shall deprive a person of life, liberty, or property, unless the state shall choose to do so." *In re Ziebold,* 23 Fed. 791.

It has been repeatedly held that, in governments such as ours, based upon written constitutions, "due process of law" has a broader meaning than "the law of the land" as used in Magna Charta and construed in England where the parliament is supreme. Yet the United States Supreme Court has said of the latter phrase that it was "intended to secure the individual from the arbitrary exercise of the powers of government, unrestrained by the established principles of private rights and distributive justice." *Bank of Columbia v. Okely,* 4 Wheat. 235, 4 L. Ed. 559.

On the bench when that opinion was handed down sat Marshall and Story, and of the definition itself, as applied to "due process of law" Judge Cooley said, "We have met in no judicial decision a statement that embodies more tersely and accurately the correct view of the principles we are considering."

It is immaterial whether the state should choose to deprive a person of life, liberty or property without trial by an act of the legislature or by a constitutional provision. Either is an *"arbitrary* exercise of the powers of government." Either is a denial of "due process of law" and a violation of the federal Constitution.

It has been argued here that the "due process" clause of the federal Constitution is not violated if the constitutional question, raised in the trial court, may in some manner be certified to us for determination, and further proceedings below suspended until the question is adjudicated. It is said that many states have provided a similar procedure under such circumstances, and that the duty devolves upon us, under section 1997 R. S. 1908, to provide such certification. We have examined the authorities cited on that subject. With a single exception they are from states where jurisdiction is conferred by statute, or relate to hearings in appellate courts, or concern the complete transfer of a cause from a court having no jurisdiction to one having full jurisdiction to hear and determine every issue that can be raised. That exception is the following:

"When an important and difficult Constitutional question arises in an action or proceeding pending before the District Court in any county of this state, the Judge of said court *may,* on motion of either party, or upon his own motion, cause the same to be reserved and sent to the Supreme Court for its decision." Sess. Laws Wyo. 1903, Chap. 72, p. 78.

This act does not prohibit the trial court from passing upon a constitutional question.

The power of the legislature itself to provide such procedure has been denied. *Sanger et al. v. Truesdail et al.,*

8 Mich. 543; *Jones v. Smith et al.,* 14 Mich. 333.

If it is no denial to a defendant of "due process of law" to compel him to try a portion of his case in the district court, and a portion of it in the supreme court, it may, with equal validity, be provided that; should the information be filed in the district court of Weld County and his defenses be, 1. The unconstitutionality of the act under which he is prosecuted, 2. An alibi, and 3. Insanity, the constitutional question shall be heard only in the supreme court, the defense of insanity in the county court of Pueblo County, the alibi in the district court of Montezuma County, and the remainder of the cause be tried where the information was filed. Should such an outrage be permitted by the constitution can there be a lingering doubt in the mind of any man that the accused has been denied "due process of law?" Can those who sanction such procedure still contend that transportation of the colonists to England for the trial of offenses alleged to have been committed on this continent would have involved any violation of individual rights?

Having held said section 1, art. VI null and void so far as it attempts to prohibit trial courts from adjudicating state constitutional questions, it becomes our bounden duty to say to what extent, if at all, this decision is affected by the recall provisions of said section. This is true for the same reasons as set out in our opinion in No. 9522, and for the reasons there given we are forced to declare such recall provisions null and void. If the people cannot by statute or constitutional enactment deny to any person "due process of law" no more can they accomplish the same object by popular vote under the guise of the recall of a court decision. The prohibition of the federal Constitution is against the *state* itself. What the state cannot do it cannot authorize one of its municipalities to do.

"Even by constitutional amendment, the people cannot set apart any portion of the state in such manner that that portion of the state shall be freed from the constitution."

*People ex rel. Elder v. Sours,* 31 Colo. 369, 385, 74 Pac. 167, 102 Am. St. Rep. 34.

Every decision of this court upholding the XXth amendment to the state Constitution (which provides for the organization of home rule cities) is based upon the proposition that the amendment does not violate this federal law against the creation of a state within a state, and in each it is conceded by the litigants, and held by the court, that if it did so it would be null and void. What it has been repeatedly held the XXth amendment did not and could not do is now attempted by said section 1, art. VI, in that, by the simple expedient of a municipal recall of all decisions interfering with the city's absolute independence, it may escape altogether from the control of the state Constitution.

If a city of Colorado be empowered by a vote of its citizens to determine when it will and when it will not permit the state Constitution to be enforced within its borders, it is thus freed from the fundamental law of the land and may set at defiance the whole power of the people of the commonwealth. It may enact its own constitution, establish its own courts of general jurisdiction, provide its own criminal code, refuse to pay state taxes, and do any and all things which a sovereign power may do.

To uphold the municipal recall provisions of said section 1 would therefore be to overthrow the XXth amendment, as in violation of this rule against the creation of a state within a state. By the exercise of the powers therein pretended to be granted a home rule city would destroy itself.

To uphold any portion of the "recall" provisions of said section 1, art. VI, is to destroy the constitution itself by holding that the people may, by popular vote, decide whether they will or will not recognize it *in a given case.*

We must not be understood as saying that the people of Colorado cannot make any change in, or amendment to, their fundamental law which is not of itself a violation of the federal Constitution. They have the power to create

courts and abolish them. They may confer jurisdiction upon one court and deny it to another, but they are powerless to violate the federal Constitution or strip their courts of the power to pass upon such a violation.

If the Constitution of Colorado does not guarantee due process of law to a single individual, the weakest and most forsaken ever brought before the bar of justice, even against the unanimous demand of the whole people of the state for summary punishment, then it is a violation of the supreme law of the land and its pretended safeguards a delusion and a mockery.

If an unconstitutional statute, creating a crime unknown to the common law, may be passed by the legislature; if a citizen may be put upon trial thereunder; if the trial court may be prohibited from hearing his plea that the statute violates the constitutional guaranties of his state; if, when this court has so held, that statute may be reenacted by a bare majority of those voting thereon and the severest penalties be thereupon inflicted; then law has become a phantom and justice a dream, and constitutional guaranties of the sacredness of life, liberty and property,

"a tale
Told by an idiot, full of sound and fury,
Signifying nothing."

It follows from what has hereinbefore been said that all those provisions of amended section 1, of art. VI of our state Constitution which purport to furnish the plan and machinery for the nullification of the decisions of this court holding state laws and city charters contrary to the state Constitution are null and void and are not subject to the prohibition that they shall not be binding until sixty days after the date of their filing, but stand on the same footing as other decisions of this court.

Having thus, in this cause and in No. 9522, disposed of so much of amended section 1 of art. VI of the state Constitution, it is imperative to say what, if any, portion of that section remains. The first nine lines of this section and a part of the tenth read as follows:

"Section 1.   The judicial power of the state as to all matters of law and equity, except as in the constitution otherwise provided, shall be vested in a Supreme Court, District Courts, County Courts, and such other courts as may be provided by law.   In counties and cities and counties, having a population exceeding one hundred thousand, exclusive original jurisdiction in cases involving minors and persons whose offenses concern minors may be vested in a separate court now or hereafter established by law."

It is perfectly apparent that so much of the section is in no way involved in the issues here presented or the questions here determined.   The remainder is held null and void and no part of the state Constitution.

Defendant's motion and demurrer put in issue two questions of law, 1st.   That the act under which the information was filed was unconstitutional; 2nd.   That the raising of that question ousted the court of jurisdiction.

The judgment, to which alone we must look, merely sustains the motion and demurrer.   The "opinion" of the court is not to be considered.   If either objection to the information were good the ruling must be upheld.   We have seen that the second was not.   It therefore becomes necessary to consider the first, for if the act itself was unconstitutional the judgment was correct, however wrong the reasons given.   The record shows that no evidence was taken, and the facts set forth in the motion to quash were not admitted.   We must assume, therefore, that only questions of law were considered by the court in entering the judgment, and our review must be confined to those.

Defendants have favored us with no briefs on these subjects and in our opinion it is necessary to consider only the contentions, 1.   That the act is in violation of section 21, art. V of the state Constitution in that it contains more than one subject, and that these are not clearly expressed in the title; 2. that it violates section 25 art. II of the state Constitution and paragraph 1, art. XIV of the amendments to the United States Constitution in that it abridges the

privileges and immunities of citizens, denies the equal protection of the law, and denies "due process."

The title of this act is "An Act Relating to the practice of Medicine in the State of Colorado." Defendants assume that "the practice of medicine" means the practice of administering drugs and nothing more, hence they maintain that this statute which establishes a board of medical examiners and commits to their jurisdiction the admission of persons to practice medicine, the revocation of licenses, the practice of chiropody, optometry, chiropractic and midwifery, and provides penalties for its violation, is entirely beyond the scope of the title. With this contention we are unable to agree. "Medicine" as herein used is properly defined as the art of healing. See Webster's Dictionary and 27 Cyc. 466. So defined the title includes everything covered by the act. Every provision thereof germane to this subject is valid. *People ex rel. Colo. Bar Ass'n. v. Erbaugh,* 42 Colo. 480, 490, 94 Pac. 349.

The generality of the title is commendable. *In re Breene,* 14 Colo. 401, 405, 24 Pac. 3.

Neither does the statute deny "due process of law." It creates a tribunal, provides for notice and hearing, for evidence and argument. *In re Lowrie,* 8 Colo. 499, 512, 513, 9 Pac. 489, 54 Am. Rep. 558.

The contention that it abridges the privileges and immunities of citizens and denies equal protection of the law is included within the objection that it denies "due process." They stand or fall together.

Constitutional objections have been raised to similar legislation in many states but these acts are supported by the great weight of authority. See *Dilliard v. Medical Board,* 69 Colo. 575, 196 Pac. 866, decided at the present term, and cases therein cited.

The judgment on the motion to quash and demurrer to the information was wrong and is therefore disapproved and reversed. *People v. Fitzgerald,* 51 Colo. 175, 177, 117 Pac. 135.

MR. CHIEF JUSTICE SCOTT not participating.