**Morton L. SIMONS, Appellant,**

v.

**FEDERAL BAR BUILDING COR-PORATION, Appellee.**

**No. 5270.**

District of Columbia Court of Appeals.

Argued Nov. 16, 1970.

Decided March 25, 1971.

Morton L. Simons, pro se.

James M. Kefauver, Washington, D. C., with whom Hershel Shanks, Washington, D. C., was on the brief, for appellee.

Before HOOD, Chief Judge, and NE-BEKER and YEAGLEY, Associate Judges.

HOOD, Chief Judge:

Seeking office space for his law practice, appellant-defendant undertook negotiations with appellee's rental agent (Swesnik and Blum, Inc., hereinafter Blum) culminating in the execution of a lease in June 1967 for the occupancy of space in the Federal Bar Building West (hereinafter Bar Building) to commence in August 1967.[1] Appellant sought approximately 800 square feet bordering on the front of the building, but Blum considered the rental of an area of that size and location to be economically impractical. An accommodation was finally reached whereby appellant obtained his desired location by contracting for nearly twice as much space as he needed, with the understanding that he could divide the area into two separate suites, occupy the larger one for his own use (suite 910) and sublease the other (suite 920). The 5-year lease fixed the rental for the total area at $865 per month. Apportioning the rent to each suite according to its relative size, appellant computed the monthly rental on suite 910 to be $465 and on suite 920, $400.

All efforts by appellant to sublet suite 920 were unsuccessful. He paid the full rent due for the first three months of his occupancy—September, October, November[2]—and, unable to find a subtenant, withheld the December rent allocable to suite 920. Thereafter, in January 1968, appellant withheld the entire amount, and for the succeeding 12½ months (until the middle of February 1969) remitted the amount attributable only to suite 910, at which time suite 920 was rented to an independent law firm. The total amount withheld was $6,265.

Appellee brought an action in January 1968 to recover unpaid rent accrued as of that time, plus attorney's fees pursuant to a provision in the lease, in the total amount of $2,500. Appellant's answer presented an affirmative defense alleging he had been induced to enter into the lease by the fraudulent misrepresentations of appellee's agent. Also set forth was a counterclaim for damages in the amount of $1,600, incorporating the allegations of fraud set out in the affirmative defense and, in addition, alleging violation of certain obligations under the lease.

More specifically, the misrepresentations related to certain acts that Blum allegedly promised to perform and refrain from doing in order to assist appellant in subleasing suite 920 and to alleged premium features that the building would contain, namely, that Blum would send appellant prospective tenants, he would lease no suite for a term of less than 5 years nor for a monthly rental of less than $425, rentals would extend to lawyers only, direct access would be provided to the adjacent building which houses the National Lawyers Club and library facilities and air conditioning would be available on a year-round basis.

In November 1968, appellee moved to amend its complaint adding a request for possession on the ground of nonpayment of

1. At the time of the negotiations the Bar Building was under construction.

2. Appellant took possession in August but was not obligated to pay rent for the remainder of that month due to the unfinished state of the premises.

rent. In January 1970, just prior to trial, appellee moved to supplement its complaint, originally claiming $2,500, to include additional damages incurred between the filing of the complaint in January 1968 and the entry of final judgment. At the pretrial proceedings, it was ordered that the determination of attorney's fees would be deferred until trial was had on the merits.

After a trial consuming several days the jury rendered a verdict for appellee in the amount of $6,386.32 in back rent[3] and a verdict for appellee on appellant's counterclaim. The trial judge entered judgment on the verdict[4] and, after a separate hearing, awarded appellee attorney's fees in the amount of $3,500. On this appeal, appellant raises numerous points, only several of which require extended discussion.

## I.

At the outset, appellant claims that the trial court should have dismissed the action for lack of jurisdiction when it appeared subsequent to trial that appellee was asking for a sum[5] in excess of the statutory jurisdictional amount.[6] The original complaint pleaded an amount ($2,500) well within the statutory limit. The amended complaint[7] merely included a measure of additional recovery, one element of which, attorney's fees, was contingent upon the course of the litigation and therefore could not be reasonably estimated nor determined until termination of the proceedings. We are therefore faced with the question whether an amended pleading made prior to trial for the purpose of including attorney's fees accumulating subsequent to the filing of suit served to oust the trial court of jurisdiction. From a careful examination of the case law, it is apparent that this question is one of first impression in this jurisdiction.[8]

It is appellant's position that jurisdiction is to be governed by the amount *ultimately* claimed and will be defeated by amendments raising the claim above the jurisdictional limit. The cases relied upon by appellant from this jurisdiction are inapplicable.[9] In those cases it was apparent from the allegations on the face of the complaint that the jurisdictional limit had been exceeded. Of the three cases from

---

3. This figure included $121.32 as escalation rent which is the subject of discussion in Part III *infra*.

4. We note that the judgment entered on February 26, 1970 made no mention of appellee's claim for possession despite specific direction with respect to such relief in the jury instructions. Since the variance has not been questioned on appeal, we express no opinion in that regard.

5. At the hearing in regard to attorney's fees appellee presented a claim for over $8,000 which, when coupled with its claim for back rent in excess of $6,000, raised the total damages sought above $14,000.

6. D.C.Code 1967, § 11–961(a) as then existing read in pertinent part:
   In addition to other jurisdiction conferred upon it by law, the District of Columbia Court of General Sessions has exclusive jurisdiction of civil actions, * * * in which the claimed value of personal property or *the debt or damages claimed does not exceed the sum of $10,000, exclusive of interest and costs* * * *. (Emphasis added.)

7. Whether this pleading is to be regarded as an amendment which relates back to the date of the original pleading under GS Civ. Rule 15(c) or a supplemental pleading under 15(d) is immaterial in view of our disposition of the issue.

8. We take as a basic assumption that attorney's fees, at least by reason of the contractual provision in the lease, comprise an element of damages in determining jurisdictional amount. 20 Am. Jur.2d Courts § 163 (1965); *cf.* Shipley v. Major, D.C.Mun.App., 44 A.2d 540 (1945).

9. Fox v. Shannon & Luchs Co. of Washington, D.C.App., 236 A.2d 60 (1967); Reeves v. Yale Transp. Corp., D.C.Mun. App., 128 A.2d 792 (1957); Hirshon v. Whelan, D.C.Mun.App., 113 A.2d 484 (1955), rev'd per curiam, Whelan v. Hirshon, 98 U.S.App.D.C. 82, 232 F.2d 339 (1956); Bowles v. Stonebraker, D. C.Mun.App., 65 A.2d 575 (1949).

other jurisdictions cited by appellant,[10] one is inapposite,[11] and the other two are wholly unpersuasive.[12]

We think the better reasoned approach is taken by a line of Texas decisions upholding the jurisdiction of the trial court where the amended pleading, encompassing damages accruing from the commencement of the action, ultimately sought a recovery greater than the jurisdictional limit.[13] The underlying rationale of these cases is that where jurisdiction is lawfully and properly acquired at the outset, the accumulation of unliquidated damages, outside the control of the party bringing suit, is of no jurisdictional consequence. Adoption of this rationale is entirely consistent, if not demanded by, the long-standing rule applied in this jurisdiction, as enunciated by this court in Goldberg v. Roumel, D.C.Mun. App., 40 A.2d 253, 254 (1944), that the amount a plaintiff claims in good faith in his initial pleading controls for purposes of determining jurisdictional amount.[14]

As a matter of practicality, if we were to adopt appellant's position, dismissal of the suit after several years of litigation would put appellee in the patently absurd position of renewing his action in a court which was inaccessible to him at the time his cause of action first accured. We hold

that the trial court properly acquired and retained jurisdiction.[15]

## II.

Appellant finds fault with the charge to the jury in several particulars.

■ First, it is claimed that the instructions failed to apprise the jury of the proper elements upon which a finding of fraud could be predicated. The trial judge refused to adopt appellant's proposed instruction that actionable fraud may consist not merely of misrepresentations of material facts, as charged,[16] but also of promises made with no intention to perform.[17] Without this additional element, appellant argues that there was no concrete relationship between the jury instructions and the evidence adduced, the crux of which related to certain acts of future performance allegedly promised by appellee's agent as an inducement to enter the lease.[18]

As the composition of instructions is largely a matter within the discretion of the trial court, we refrain from handing down any hard or fast rules but rather examine each case on its own facts and circumstances. Finding that certain portions of the instructions embodied appellant's requested element, and accepting the proposi-

10. Williams v. Rosinsky Motor Co., 133 Cal.App.2d 798, 284 P.2d 979 (1955); People v. Max, 70 Colo. 100, 198 P. 150 (1921); Shapiro v. Elect Dress Co., 20 N.Y.S.2d 681 (Sup.Ct.1940).

11. People v. Max, *supra* n. 10.

12. Williams v. Rosinsky Motor Co., *supra* n. 10; Shapiro v. Elect Dress Co., *supra* n. 10.

13. Cook v. Jaynes, 366 S.W.2d 646 (Tex. Civ.App.1963); Haginas v. Malbis Memorial Foundation, 163 Tex. 274, 354 S.W. 2d 368 (1962); Isbell v. Kenyon-Warner Dredging Co., 113 Tex. 528, 261 S.W. 762 (Comm. of App.1924); Siensheimer & Co. v. Maryland Motor Car Ins. Co., 157 S.W. 228 (Tex.Civ.App.1913); Ft. Worth & D.C. Ry. Co. v. Underwood, 98 S.W. 453 (Tex.Civ.App. 1906).

14. *See* 21 C.J.S. Courts § 54b (1940).

15. Alternatively, appellant seeks to defeat jurisdiction by placing a monetary value on appellee's claim for possession. The Court of General Sessions has jurisdiction to try actions involving possession of real estate regardless of the remaining rental value of the leasehold. *See* Service Parking Corp. v. Trans-Lux Radio City Corp., D.C.Mun.App., 47 A.2d 400 (1946).

16. *See* Young Lawyers Section, Bar Association of the District of Columbia, Standardized Jury Instructions for the District of Columbia, Instruction 272 at 191–92 (rev. ed. 1968).

17. Hight v. Richmond Park Improvement Co., 47 App.D.C. 518 (1918); Lee v. Fisco Enterprises, Inc., D.C.App., 233 A. 2d 44 (1967).

18. See the specific alleged misrepresentations enumerated *supra*.

tion that a representation of an intention is a representation of fact,[19] that fact being an existing state of mind, we conclude that the instructions were adequate in the context of this case and error, if any, was harmless.[20]

■ Failure to instruct that fraud may consist of the concealment or suppression of a material fact [21] did not constitute error where the circumstances concealed gave rise, at best, to a matter of opinion.[22] Nor did the trial judge abuse his discretion in refusing to instruct that the party making a false representation need not know of its falsity if it involves his own business or property [23] where there was no basis in the evidence for such an instruction.

■ Secondly, appellant contends that the trial judge should have given an instruction on intentional interference with a business relationship. in two aspects: interference with prospective advantage and interference with a contractual relation. Of the two incidents pointed to by appellant, neither supports such an instruction. The evidence in both incidents was insufficient to show a tortious interference,[24] as well as, in one, the likelihood that appellant's negotiations would have succeeded.[25]

■ As a third claim of error, appellant assigns the trial judge's refusal to instruct the jury that appellee had a duty to mitigate damages by making efforts to re-let the premises upon appellant's withholding of the rent for suite 920. It has long been the rule in this jurisdiction that in the absence of a contractual provision reserving the landlord's right to re-enter and re-let upon tenant's default while holding the tenant liable for any deficiency or loss of rent, the landlord is under no obligation to mitigate damages before the expiration of the lease even after an abandonment.[26] Here there was no abandonment; appellant occupied suite 910, under a lease the terms of which covered the area comprising both suites, and continued to remain in possession.[27] Nor may the contract be regarded as divisible. The inescapable intention of the parties was to have appellant rent the total area so as to obtain a front location.

Lastly, appellant claims that the instructions on his counterclaim were inadequate and that the instructions taken as a whole were misleading and confusing. We have carefully reviewed the record and find that the instructions, extensive as they were, fairly and adequately apprised the jury of the proper legal principles.[28] Presumably,

19. Snow v. Howard Motors, Inc., 3 Conn. Cir. 702, 233 A.2d 409, 414 (1966); Hight v. Richmond Improvement Co., *supra* n. 17, at 534.

20. Since appellant's entire evidence of fraud related to promises to be performed in the future, it is hard to imagine that the jury was misled by the instruction. In the context of a trial where the allegations of fraud and the evidence presented encompass several types of misrepresentation, alteration of the standarized instructions may be advisable.

21. Lee v. Fisco Enterprises, Inc., *supra* n. 17, at 45; Andolsun v. Berlitz Schools of Languages of America, D.C.App., 196 A.2d 926, 927 (1964).

22. *See* Rosenberg v. Howle, D.C.Mun.App., 56 A.2d 709, 711 (1948).

23. Darnell v. Darnell, 91 U.S.App.D.C. 304, 200 F.2d 747 (1952).

24. *See* Deoudes v. G. B. Macke Corp., D.C. Mun.App., 153 A.2d 309 (1959); Prosser, Law of Torts § 124 (3d ed. 1964).

25. *See* Diener v. Weiss, 350 Mass. 782, 216 N.E.2d 566 (1966); 45 Am.Jur.2d Interference § 12 (1969).

26. McIntosh v. Gitomer, D.S.Mun.App., 120 A.2d 205, 206 (1956); Friedman v. Thomas J. Fisher & Co., D.C.Mun.App., 88 A.2d 321, 323 (1952).

27. *See* Friedman v. Thomas J. Fisher & Co., *supra* n. 26.

28. As to appellant's assertion that the instructions put undue emphasis on the necessity for precise proof of damages in relation to appellant's counterclaim, we

appellant also must have thought them satisfactory during the trial for the record shows no objection in the above respects.

## III.

■ The lease contains a "rent escalation" clause the purpose of which is to charge each tenant for his proportionate share in the increased operational expenses of the building over the term of his lease. The clause provides that the increase in monthly rentals shall be a certain percentage of the "operating expense escalator". The percentage is derived pursuant to a specified formula calling for the division of the number of square feet rented (1,444 here) by the total number of rentable square 'feet . in the building (98,200). When the lease was executed, the resulting figure placed in the blank space provided in the clause was .015%. Six months later, Blum notified appellant by letter that due to a typographical error, the figure of .015 had been erroneously inserted whereas the correct figure, in accordance with the designated formula, should have been 1.5. Apparently the error resulted from a failure to move the decimal point two places to the right in order to properly convert the figure into a percentage. From the effective date of the escalation clause in November 1969, appellant has paid the amount reflected by .015% ($.31) instead of the amount requested under the corrected figure of 1.5% ($30.64). Appellee sought to recover the deficiency and the jury's verdict was favorable.

Appellant claims it was error for the trial judge not to have directed a verdict in his favor with respect to the escalation issue. Arguing that there is no inconsistency between the typed figure (.015) and the figure derived by a strict operation of the formula, appellant would hold appellee to the literal terms of the contract. We believe this situation is governed by the myriad of cases granting relief for an obvious mistake in transposing the agreement to writing.[29]

It has been frequently assumed or stressed (as in several of the cases cited in footnote 29) that the mistake be mutual before relief can be granted. Professor Corbin cautions against molding such a generalization into a rigid rule of law. He wisely points out that the classification of mistakes as either "mutual" of "unilateral" is seldom accompanied by definition or analysis and that cases do not readily fall into one category or the other.[30] Relief has been granted where the mistake has been denominated "unilateral"[31] and also where it is held that the contract lacks mutuality even though the error resulted from the miscalculation of only one party.[32] Fairness will best be served by weighing the circumstances surrounding the mistake rather than the application of mechanical rules which ignore the real nature of the situation.[33]

In the instant case, appellant was notified of the error in computation almost 2 years prior to the invocation of the escalation clause. When the mistake became ob-

---

read them as containing only admonitions against speculative or conjectural estimates leaving the ultimate amount to a reasonable exercise of the jury's discretion.

29. Vakas v. Manuel, 114 U.S.App.D.C. 368, 316 F.2d 369 (1963) ; Maryland Cas. Co. v. Morris Oil Corp., 233 F.2d 291 (4th Cir. 1956) ; Capital Linoleum Co. v. Savage, D.C.Mun.App., 91 A.2d 564 (1952) ; Baldwin v. Equitable Life Assurance Soc'y of United States, 252 Iowa 639, 108 N.W.2d 66 (1961) ; Cofrancesco Constr. Co. v. Superior Components, Inc., 52 Tenn.App. 88, 371 S.W.2d 821 (1963) ;

Buck v. Equitable Life Assur. Soc. of the United States, 96 Wash. 683, 165 P. 878 (1917).

30. 3 Corbin, Contracts § 608, at 669–70 (1960).

31. Cofrancesco Constr. Co. v. Superior Components, Inc., *supra* n. 29, at 824.

32. Baldwin v. Equitable Life Assurance Soc'y of United States, *supra* n. 29, at 71 ; Buck v. Equitable Life Assur. Soc. of the United States, *supra* n. 29, at 879.

33. *See* 3 Corbin, *supra* n. 30 at §§ 608–9.

vious to appellant, he sought to bind a prospective subtenant with a similar clause based upon appellee's corrected figure. Knowing of the error and seeking to avoid it in another transaction, appellant cannot now insist upon its validity. Moreover, it cannot be said that notification of the mistake victimized appellant with unfair surprise. As a lawyer, appellant must have known, after discussion, that the purpose of the escalation clause was to apportion the increased cost of operating the Bar Building according to each tenant's proportionate share of the total floor space in the building. This was the intended agreement of the parties at the time of contracting. The operational expenses upon which the increased rentals depended were not available from the accountant until the end of the fiscal year in September 1969. Only at that time could the exact amount of the escalation rent be calculated. Surely, appellant could not have placed any significance or reliance on the abstract percentage figure of .015 until it was first called to his attention by appellee's timely letter of notification. It is our conclusion, therefore, that as a matter of law the judgment below properly afforded appellee relief.

### IV.

■ Recognizing that attorney's fees may be awarded pursuant to a valid contractual provision,[34] appellant attacks the validity of the clause [35] purporting to hold him liable for the legal fees as being unconscionable, contrary to public policy and, hence, unenforceable. For the force of his argument, appellant relies on Williams v. Walker-Thomas Furniture Co., 121 U.S. App.D.C. 315, 350 F.2d 445 (1965), stating the doctrine of unconscionability. Factual-

ly, that case is clearly distinguishable from the instant case, and the application of its rationale militates against a finding of unconscionability here.

Appellant, an attorney, signed a lease after a considerable period of negotiation, the terms of which were neither hidden nor deceptive. More importantly, it cannot be said that the clause in question was unreasonable or unfair in light of the commercial exigencies facing appellee.

■ Appellant further contends that even if the attorney's fee provision is valid, it cannot be applied to him because the provision "only purports to bind tenant to pay legal fees that landlord actually pays", and there has been no showing that appellee has paid, been billed or agreed to pay any legal fees. We disagree. We do not read the provision as an indemnity agreement, as appellant would have us, and even if it could be construed as such, the testimony at the post-trial hearing by appellee's attorney regarding his fees was ample to satisfy the requisite for recovery—a showing that appellee was obligated to pay.[36]

### V.

■ Having read the summation of both parties in the context of an energetically contested trial, and in view of appellant's response, we cannot say that the remarks by appellee's counsel asking the jury to draw inferences about appellant's character from specific incidents, if improper, were sufficiently prejudicial to warrant reversal.

### VI.

■ Appellant's most substantial contention is that the judgment must be re-

---

34. Wolf v. Cohen, 126 U.S.App.D.C. 423, 426, 379 F.2d 477, 480 (1967).

35. The clause reads in pertinent part:
    If by reason of Tenant's default in the payment of rent or breach of any provision of this lease, Landlord retains legal counsel to obtain payment of rent or damages for breach of any provision

of this lease or equitable relief, the cost of such legal counsel and the cost of any legal proceeding shall be paid by the Tenant as additional rent.

36. See Interstate Life & Acc. Ins. Co. v. RKO Teleradio Pictures, 201 F.Supp. 574 (W.D.Tenn.1962).

versed because an improperly conducted poll of the jury had coercive effect on several jurors. Upon careful consideration, we conclude that reversal is not required.

When the jury returned after lengthy deliberations, the foreman announced a verdict favorable to appellee on its claim for back rent and on appellant's counterclaim. Appellant then requested a poll of the jury. The colloquy of which appellant complains is as follows:

THE CLERK: Milton Jackson, with respect to the plaintiff's [appellee's] claim against the defendant [appellant]?

MILTON JACKSON: I am for the plaintiff.

THE DEPUTY CLERK: And with respect to the counterclaim against the plaintiff?

MILTON JACKSON: I am for the defendant.

THE COURT: You understand the question? Do you understand the question? The question is what is your verdict with respect to defendant's claim against the plaintiff? Now you found in favor of the defendant or do you find in favor of the plaintiff?

MILTON JACKSON: The defendant.

THE COURT: Well, if you find in favor of the defendant, what is the verdict?

MILTON JACKSON: Well, I don't think he is entitled to any damages.

THE COURT: Well, now you are confused. * * * Now you say you don't think Mr. Simons is entitled to anything on the counterclaim, or against the plaintiff?

MILTON JACKSON: No, I do. No.

THE COURT: Then your verdict would be in favor of the plaintiff, wouldn't it?

MILTON JACKSON: For the plaintiff, all right.

* * * * * *

THE DEPUTY CLERK: Charles Page.

CHARLES PAGE: For the plaintiff, no damages against the defendant.

THE DEPUTY CLERK: That is with respect to the defendant's claim against the plaintiff, sir. How do you find?

THE COURT: Well, I think perhaps the question should be how do you find with respect to the claim of the plaintiff and the counterclaim, and if your verdict is in favor of the plaintiff on both. Why say plaintiff on both? If it is not, then say in favor of the defendant.

CHARLES PAGE: I am in favor of the plaintiff on the first case.

THE COURT: Yes, and what about the second?

CHARLES PAGE: That is the countersuit, isn't it?

THE COURT: That is right.

CHARLES PAGE: Mr. Simons is the defendant—I mean the plaintiff, isn't he?

THE COURT: He would be the plaintiff there, I see.

CHARLES PAGE: Well, I am for the defendant.

THE COURT: Do you mean the Federal Bar?

CHARLES PAGE: Yes, sir.

[The trial judge proceeded to correctly define the parties in each claim and the poll continued.]

* * * * * *

THE DEPUTY CLERK: Charles Sanders.

CHARLES SANDERS: For the plaintiff in the first case and the second case in favor of the defendant.

THE COURT: Well, there still seems to be confusion. We are talking about Mr. Simons. The second case is Mr. Simons' suit against the plaintiff. Do you find in favor of Mr. Simons or do you find in favor of the plaintiff?

CHARLES SANDERS: In the case of the plaintiff.

THE COURT: All right, well say that, please.

\*   \*   \*   \*   \*   \*

[When the poll was completed the following occurred:]

THE COURT: All right, so there will be nobody misunderstanding about it, as we have heard your verdict individually, they are for the plaintiff and in the case of the plaintiff against the defendant, they are for the plaintiff in the defendant's case against the plaintiff. In other words, in both cases you find in favor of the plaintiff, is that right?

THE JURY: (A chorus of yesses.)

There is no doubt that some uncertainty existed in the minds of these jurors concerning the correct way of reporting the verdict. Where that uncertainty results from confusion rather than dissent, the trial judge may circumspectly question the jurors to obtain clarity.[37] Only where it is clear that the verdict of one juror *differs* from another and further attempts are made to extract unanimity has the conduct of the trial judge been held improper.[38]

We view this case as one of confusion. In light of the complex issues, the extensive instructions and the cross-pleadings, it is totally conceivable that a number of jurors encountered difficulty in expressing their verdict. What the trial judge did was merely attempt to ascertain the position of the jurors in a manner intended neither to influence nor alter their judgment. The confusion of juror Jackson became evident when he initially responded for defendant (appellant) on the counterclaim and failed to award him damages. Upon further proper inquiry, it was ascertained that Mr. Jackson was in agreement with the verdict tendered by the foreman.

It was obvious that juror Page reversed the parties on appellant's counterclaim; regarding Simons as the plaintiff (in fact, the defendant) and the Federal Bar Building Corporation as the defendant (in fact, the plaintiff). The trial judge recognized this confusion, and after juror Page announced that he was for the defendant on the counterclaim, asked him expressly whether he meant the "Federal Bar", to which the juror responded affirmatively.[39]

No less persuasive in our determination of the issue is the absence of objection by appellant during the course of the poll. This has particular significance with regard to the response of juror Sanders. Appellant claims that Sanders' final reply, "In the case of the plaintiff", was unresponsive to the court's preceding inquiry, "Do you find in favor of Mr. Simons or do you find in favor of the plaintiff?" As pointed out in Jackson v. United States, 128 U.S.App.D.C. 214, 216, 386 F.2d 641, 643 (1967) and again noted in United States v. Brooks, 137 U.S.App.D.C. 147, 150, 420 F.2d 1350, 1353 (1969), an appellate court is somewhat handicapped in evaluating the propriety of a jury poll because a cold record cannot recreate the situation, in all its mien, as it appeared to the trial judge. Where counsel fails to make

---

37. Williams v. United States, 136 U.S.App.D.C. 158, 419 F.2d 740 (en banc 1969). *See* 2300 Restaurant v. Cavell, D.C.Mun.App., 143 A.2d 637 (1958).

38. Bruce v. Chestnut Farms-Chevy Chase Dairy, 75 U.S.App.D.C. 192, 126 F.2d 224 (1942); In re Pearson, D.C.App., 262 A.2d 337 (1970).

39. In suits involving counterclaims and cross-claims, the practice or referring to the litigants by their actual names during a poll instead of as plaintiff or defendant, as the case may be, has much to commend itself in alleviating possible confusion over the identity of the parties to the litigation.

timely objection, as in the case of juror Sanders, which might indicate additional circumstances upon which intelligent review may be based, we are reluctant to overturn the trial judge's assessment of the poll.

Affirmed.