PLAINTIFF in error is hereinafter referred to as the company and defendants in error as the water officials.
The company sought a mandatory injunction to protect its decreed rights to water for irrigation. The water officials set up two defenses, the second of which was a compact between the states of Colorado and New Mexico. The cause was tried to the court, which found generally for the water officials and entered judgment of dismissal, each party to pay its own costs. To review that judgment the company prosecutes this writ.
The La Plata river rises in the La Plata mountains in Colorado, flows in a general southerly direction, crosses this state's southern boundary near the southwest corner of La Plata county, and joins the San Juan river near Farmington, New Mexico. The company, through its diversion canal, the La Plata River and Cherry Creek ditch, has decreed priority No. 6 under which it is entitled to divert 39.25 cubic feet of water per second through its headgate on the La Plata river for the irrigation of lands in what is known as Thompson's Park in La Plata county. This water is in the stream, has been used and is needed by the company. Each state has adopted the same appropriation system of dealing with irrigation water. Other decrees similar to the company's and junior and senior to it, have been entered in each state. These interstate conflicting claims, and the controversies arising therefrom, induced the execution of the "La Plata River Compact" set up in the answer. Its negotiation was authorized by the general assemblies of the states, and pursuant to that authority it was negotiated and reported by commissioners. Colorado ratified it by chapter 191, S. L. 1923, wherein it is set out verbatim; New Mexico ratified it by chapter 7, S. L. 1923; and the Congress of the United States ratified it January *Page 130 
25, 1925, by chapter 110, Public Laws U.S., Second Session 68th Congress. Under that compact the waters of the La Plata river are "rotated" to meet, as nearly as possible, the rights and needs of appropriators in both states. This system results in interfering with the company's use of its decreed appropriation when it needs it, and under its decree is entitled to it.
[1] In paragraphs of their brief, forceful in language, polished in diction, and tempting in the allurements they present, counsel for the water officials suggest the fascination and importance of the question of the validity of such compacts between sovereign states, and the propriety of its presentation to, and determination by, this tribunal. We think, however, the only material question presented by this record is the availability of said compact as a protection to the water officials in their violation of an existing and valid decree of the courts of this state. Neither the United States, nor the state of New Mexico nor its citizens, nor the state of Colorado, are parties to this controversy and, since no judgment herein entered can bind them, we disregard their possible claim. This litigation is between a citizen of this state and water officials who plead the compact as a justification for their failure to discharge duties and protect rights guaranteed by the Constitution, statutes and court decrees of Colorado.
If, by means of such a compact, state officials can take away from one man one day's use of water to which he is otherwise entitled, they can take away ten days' use. If they can rotate for a week, they can rotate for a month or a year. The compact in fact so recognizes, because it expressly provides that "The waters may be so rotated between the two states in such manner for such periods, and to continue for such time as the state engineers may jointly determine." If they can thus take water from an interstate stream at the state's border they can take it in the interior, and if they can thus take water they can take *Page 131 
any other property in any amount under similar facts and a similar pretext.
"No state shall, without the consent of congress, * * * enter into any agreement or compact with another state * * *." Art. I, sec. X, par. 2, U.S. Constitution. Conceding for the purposes of this case that this negative implies an affirmative, it falls far short of a grant of power to any state, with the consent of Congress, to enter into a compact violating federal or state constitutions.
"The water of every natural stream, not heretofore appropriated, within the state of Colorado, is hereby declared to be the property of the public, and the same is dedicated to the use of the people of the state, subject to appropriation as hereinafter provided." Art. XVI, sec. 5, Colorado Constitution.
"The right to divert the unappropriated waters of any natural stream to beneficial uses shall never be denied. Priority of appropriation shall give the better right as between those using the water for the same purpose; * * *." Id. sec. 6.
Pursuant to statutes passed under the two last quoted sections, the company holds its decree and demands its water. These together certainly rise to the dignity of a contract and "No state shall * * * pass any * * * law impairing the obligation of contracts, * * *." Art. I, sec. X, par. 2, U.S. Constitution.
"Private property shall not be taken or damaged, for public or private use, without just compensation. Such compensation shall be ascertained by a board of commissioners, of not less than three freeholders, or by a jury, when required by the owner of the property, in such manner as may be prescribed by law, * * * and whenever an attempt is made to take private property for a use alleged to be public, the question whether the contemplated use be really public shall be a judicial question, and determined as such without regard to any legislative assertion that the use is public." Art. II, sec. 15, Colorado Constitution. *Page 132 
The question here is not one of condemnation. There has been here no judicial taking of private property for public use with just compensation. The compact makes no provision for compensation and none has here been paid or tendered.
In its desire to foster irrigation and promote the construction of irrigation works this court, by a majority decision, two of the justices dissenting, once limited the protection of the foregoing section to proceedings in eminent domain. North Sterling Irr. Dist. v. Dickman,59 Colo. 169, 149 Pac. 97. The question was, however, later reexamined by us and in a decision en banc in which all the justices concurred (including the two who formerly dissented and two of those who formerly concurred), the Dickman case was expressly overruled and the constitutional prohibition given its literal interpretation and full force. Commissioners v. Adler, 69 Colo. 290,194 Pac. 621.
[2] "No person shall be deprived of * * * property, without due process of law." Art II, sec. 25, Colorado Constitution. A decreed priority to the use of water for irrigation is not only a property right, it is a freehold.Strickler v. City of Colo. Spr'gs, 16 Colo. 61, 26 Pac. 313;Monte Vista Co. v. Centennial Irr. D. Co., 22 Colo. App. 364,123 Pac. 831.
[3] Due process always implies a hearing or trial, and judgment. It secures the individual "from the arbitrary exercise of the powers of government, unrestrained by the established principles of private rights and distributive justice." People v. Max, 70 Colo. 100,108, 198 Pac. 150. If private rights may be stripped from the citizen by state "compacts," by legislative fiat, by commissioners, by the uncontrolled discretion of state engineers, then "due process" is dead in Colorado.
The briefs herein give much space to, and the respective parties seek to shelter their claims under, the opinions in Kansas v. Colorado, 206 U.S. 46, 27 Sup. Ct. 655; and Wyoming v. Colorado, 259 U.S. 419, 42 Sup. Ct. 594; *Page 133 260 U.S. 1, 43 Sup. Ct. 2. The latter concerned the conflicting claims of states which had adopted the appropriation system, and the former the conflicting claims of states one of which had adopted that system while the other adhered to the doctrine of riparian rights. They do not touch the right of a state by compact, without notice, hearing or compensation, to take property from one of its citizens and give it to another state or its citizens as a mere matter of expediency, without regard to the legality of their claims thereto, and in total disregard of existing constitutional, statutory and judicial prohibitions.
[4] The water officials call to their aid certain other decisions of the United States Supreme Court upholding compacts fixing state boundaries; principally Poole v.Lessee of Fleeger, 11 Pet. 185; and Coffee v. Groover,123 U.S. 1, 8 Sup. Ct. 1. But in neither of these, nor in any case known to us, has a state even attempted, by compact, to transfer to another any part of its admitted territory when by that transfer it ousted its lawful grantees in favor of those whose titles were originally derived from a state which had nothing to convey. As between a state and those who claim under it, the state is the sole judge of its own boundaries. It may have granted land on the theory that it owned it and thereafter discovered that it did not. Its grantee may thereupon be dispossessed, not because the state takes away what it granted, but because it decides that it never owned, hence could never grant.
There is not the slightest pretense, either in this compact itself or in the proceedings leading up to it, to a decision of the question of what water Colorado owns, or what water New Mexico owns, or what their respective citizens own. It is a mere compromise of presumably conflicting claims, a trading therein, in which the property of citizens is bartered, without notice or hearing, and with no regard to vested rights. *Page 134 
The judgment is reversed and the cause remanded for further proceedings in harmony herewith.
MR. CHIEF JUSTICE ADAMS, MR. JUSTICE HILLIARD and MR. JUSTICE BOUCK concur.
MR. JUSTICE BUTLER dissents.
MR. JUSTICE CAMPBELL not participating.