No. 14,002.

HINDERLIDER, STATE ENGINEER ET AL. *v.* LA PLATA RIVER AND CHERRY CREEK DITCH COMPANY.

(70 P. [2d] 849)

Decided July 6, 1937. Rehearing denied July 29, 1937.

74

Mr. Byron G. Rogers, Attorney General, Mr. Norris C. Bakke, Deputy, Mr. Charles Roach, First Assistant, Mr. Shrader P. Howell, Assistant, Mr. Ralph Carr, Mr. Jean S. Breitenstein, for plaintiffs in error.

Messrs. McCloskey & Beise, for defendant in error.

Mr. L. Ward Bannister, amicus curiae, Mr. Mark H. Harrington, of counsel.

*En Banc.*

Mr. Chief Justice Burke delivered the opinion of the court.

The original judgment in this cause was reversed by this court July 3, 1933, and a rehearing denied September 18, following. *La Plata Co. v. Hinderlider,* 93 Colo. 128, 25 P. (2d) 187. An appeal was then taken to the United States Supreme Court and the cause was dismissed there for want of final judgment below. *Hinderlider v. La Plata Co.,* 291 U. S. 650, 54 Sup. Ct. 557. It was retried below, by stipulation, on the bill of exceptions, and judgment entered as we had formerly directed. To review that judgment the plaintiffs in error prosecute this writ. Since proceedings following dismissal by the United States Supreme Court were merely for the purpose of perfecting the record no restatement of the issues is now required. Our former decision must be read in connection with, and as a part of, this. The argument in behalf of the company has been elaborated and taken a slightly different turn and amicus curiae has appeared and presented a new angle. While now technically a new suit our former decision is doubtless the law of the case and this presentation is in fact a re-

hearing. It is doubtful if anything of value can here be added to our former opinion. But since portions of it have apparently been misunderstood, and we think misconstrued, we comment further with quotations from the compact.

 ██ Counsel for plaintiffs in error now say that the object of the compact "was to determine what water Colorado owns and what water New Mexico owns," and that it settles that question. If so our opinion was based upon an erroneous assumption and reached an erroneous conclusion. We therein said: "There is not the slightest pretense, either in this compact itself or in the proceedings leading up to it, to a decision of the question of what water Colorado owns, or what water New Mexico owns, or what their respective citizens own," and we still think that statement correct. The compact says its purpose is "to provide for the equitable distribution of the waters." That may be done, and on the record before us has been done, in defiance of ownership. The compact says nothing about adjudication of ownership. It says the waters "are hereby equitably apportioned between the signatory states, including the citizens thereof." But after loosely using the term "equitably apportioned" it expressly repudiates the implied principle by the explicit assertion that neither state "concedes the establishment of any general principle or precedent by the concluding of this compact." Nor does the compact finally settle anything. It expressly repudiates the idea of final adjudication, for it declares: "This compact may be modified or terminated at any time by mutual consent of the signatory states and upon such termination all rights then established hereunder shall continue unimpaired." If this means that water users shall continue as under the compact then the compact is not terminated. If the compact is terminated distribution will thereafter be according to the laws and court decrees of the respective states. The quoted provision is therein clearly contradictory. Its only unqualified statement is that the

compact "may be terminated at any time." Thus, beyond doubt, it is a mere temporary expedient which settles nothing. It does not recognize "equitable apportionment" as against appropriation by diversion and use. It does not recognize appropriation by diversion and use as against equitable apportionment. It does not recognize a combination of the two. It does not disclose whether the equitable apportionment it talks about is an equitable apportionment as of the date when consumers diverted and applied the water, or now, or as of some intervening or future date. If we assume it settles ownership it fails to relate the term to time. If Colorado had a right to grant the company its decree at the date thereof that decree cannot now be abrogated and the water given to another on some theory of equities arising since. Were it otherwise a new compact, completely changing the allotment and plan, could be entered into next year, and another the next. All the water could be given to New Mexico over a five year period, then all again transferred to Colorado, and these priceless property rights be thus made to rest upon the shifting and uncertain base of equitable apportionment as determined by temporary conditions or advantages. A careful examination of the compact convinces us that such is the theory upon which it is drawn.

Counsel for plaintiffs in error disclose their confidence in the power of the states to settle such controversies by the sacrifice of the property of their citizens when they assert that "The rights of an individual are always subordinate to the rights of the state," citing *United States v. Schooner Peggy,* 1 Cranch 103, 5-8 L. Ed. 49, thus invoking the judicial statesmanship of Chief Justice Marshall. They apparently forget however, that while paragraph 1, section X article 1 of the federal Constitution forbids any state to pass a "law impairing the obligation of contracts," no such constitutional inhibition is laid upon the general government.

Our act authorizing the appointment of a commission

—chapter 244, page 803, S. L. 1921—expressly states as the principal duty of that commission the execution of a compact "fixing and determining the rights of each of said states to the use, benefit and disposition of the waters of said stream," yet the compact contains no word concerning rights.

Arguments of amicus curiae and counsel for plaintiffs in error put this compact upon the same footing as a final judgment of the United States Supreme Court. Were that assumption justified there would be nothing here for us to decide; but the compact, its validity and interpretation, are matters for judicial construction.

▆ In view of repeated misinterpretation of our former opinion and repeated assumptions of counsel as to the far reaching effect thereof it is deemed advisable to close with a statement of a few things we do not decide, i. e.: We do not decide that states cannot settle disputed rights by compact; that in so doing they cannot follow a particular rule or a combination of rules; that they can grant what they do not own; that if they do the grantee gets anything; that they cannot admit they have made grants beyond their rights and thus nullify such grants; that the doctrine of priority is to be upheld regardless of state lines; that rotation which deprives an appropriator of no actual advantage is not a proper method of use nor that this compact is void for all purposes as between any possible parties.

Our former opinion is adhered to, and the judgment herein is affirmed.

Mr. Justice Young dissents.

Mr. Justice Bakke not participating.

Mr. Justice Young, dissenting.

In view of what I conceive to be the far reaching importance of the principles involved in this case I feel impelled to set forth the reasons that cause me to dissent from the opinion of the court on this hearing and from

the opinion in the former case which is adhered to. I do this with considerable diffidence realizing the difficulty of doing more than restating the arguments contained in the learned dissenting opinion of Mr. Justice Butler in the former case.

It is contended by defendants in error that the former opinion in this case, *La Plata Co. v. Hinderlider*, 93 Colo. 128, 25 P. (2d) 187, is the law of the case and that we should so hold. In my opinion there are sound reasons why we should not do so, which properly should be set forth if I were writing the opinion of the court but which need not be discussed in a dissenting opinion.

The theory of plaintiff is that enforcement of the compact deprives him of a vested right granted to him by the state of Colorado and confirmed by decree of her court. If the compact does this it is void. Such rights are protected by the Constitution of the United States, which, paragraph 1, section X, article 1, forbids any state to pass a "law impairing the obligation of contracts." The La Plata river compact was authorized and commissioners appointed by Act of the General Assemblies of Colorado and New Mexico. When the compact was reported it was ratified by the General Assembly of Colorado, chapter 191 S. L. 1923. It is set out in the act verbatim. It was ratified by New Mexico by chapter 7, S. L. 1923, and the Congress of the United States ratified it January 5, 1925, by chapter 110, Public Laws U. S. Second Session 68th Congress. It thus became the law of two states and of the United States. As a law it must be judged. All doubts in favor of its constitutionality are to be resolved in favor of the law. If it does impair the obligation of a contract the statutory approval by the Congress gives it no validity because Congress could not by statute authorize a state to do what the federal Constitution forbids the states to do. To hold otherwise would make such prohibitions effective or noneffective at the will of Congress.

It is conceded that the La Plata is an interstate stream.

Of such in his opinion in *New Jersey v. New York,* 283 U. S. 336 (51 Sup. Ct. 478), Justice Holmes said: "A river is more than an amenity, it is a treasure. It offers a necessity of life that must be rationed among those who have power over it. New York has the physical power to cut off all the water within its jurisdiction. But clearly the exercise of such a power to the destruction of the interest of lower States could not be tolerated. And on the other hand equally little could New Jersey be permitted to require New York to give up its power altogether in order that the River might come down to it undiminished. Both States have real and substantial interests in the River that must be reconciled as best they may be. The different traditions and practices in different parts of the country may lead to varying results, but the effort always is to secure an equitable apportionment without quibbling over formulas. See *Missouri v. Illinois,* 200 U. S. 496, 520. *Kansas v. Colorado,* 206 U. S. 46, 98, 117. *Georgia v. Tennessee Copper Co.,* 206 U S. 230, 237. *Wyoming v. Colorado,* 259 U. S. 419, 465, 470. *Connecticut v. Massachusetts,* 282 U. S. 660, 670."

In the light of the foregoing announcement of our highest court, it must be conceded that both Colorado and New Mexico for the use of their citizens have rights in the stream. The existence of such common rights being determined it remains to consider: (a) In what manner the extent of use to which each state is entitled may be fixed and determined; (b) the extent of the use to which each state shall be entitled, and may, therefore, vest in her citizens.

In *Kansas v. Colorado,* 206, U. S. 46, 27 Sup. Ct. 655, the Supreme Court of the United States held that a controversy as to the extent of use to which the respective states are entitled in the waters of an interstate stream is a justiciable controversy cognizable by the Supreme Court of the United States. It announced in that case, in which the controversy was between a state that re-

tained the common law as to riparian rights and a state that had adopted the rule that priority of appropriation and application to a beneficial use gives priority of right, the rule that neither state had a right to use or demand for its use the entire waters of the stream but that such use must be equitably apportioned, having regard for all the surrounding facts and circumstances, between the respective states through or into which the stream flows. In *Wyoming v. Colorado,* 259 U. S. 419, 42 Sup. Ct. 552, it was held, in a controversy between two states that had each adopted the rule that priority of appropriation gives priority of right, that it was equitable to apply this principle regardless of state lines and such became practically the controlling factor in that case. That case, as I read it, does not deny the doctrine of equitable apportionment but adopts it and holds that under the facts of that case priority of appropriation regardless of state lines is a proper method of equitably apportioning the use in a controversy between states that have adopted the priority system. In that case an apportionment was made by a decree of the Supreme Court of the United States.

The controversy as to the extent of the right to use waters of the La Plata river between Colorado and New Mexico might have been settled by a decree of the Supreme Court of the United States, and if so settled the citizens of the respective states as well as the states themselves would have been bound thereby. If the decree were in the identical terms of the compact it would so bind the states and the citizens thereof. But instead of a decree obtained at the end of a suit the parties themselves—the states—made a compact. It purports to effect an equitable division of the waters of the La Plata river. It has become a part of a statute of Colorado, of New Mexico and of the United States. Surely if a court may by decree equitably apportion the waters between conflicting claimants, the claimants themselves may by contract apportion them if they equitably do so.

If the contract does equitably distribute the use surely even the Supreme Court of the United States, if one of the parties even were questioning it, must recognize and uphold it for to set it aside and do the same thing by decree would be a futile and useless proceeding. It follows that if a compact effects an equitable apportionment it must stand and that the respective states and their citizens are bound thereby.

The water officials are sought to be enjoined from carrying into effect the compact according to its plain terms. The lower court granted the injunction and the majority opinion sustains its judgment in so doing. It is not contended that the water officials were doing other than carrying out the terms of the compact. As pointed out before, a compact between states if valid binds their respective citizens just as effectually as does a decree of court. The case of *Kentucky v. Indiana,* 281 U. S. 163, 50 Sup. Ct. 275, was an action for specific performance brought by Kentucky against Indiana to compel the defendant state to carry out a compact for the building of a bridge across the Ohio river, the boundary between the two states, and to restrain certain citizens of Indiana from prosecuting a suit, on the ground that the compact was invalid, to enjoin the officers entrusted with carrying out the contract from doing so. Indiana plead the pendency of this suit in her courts. The validity of the compact was admitted by Indiana and therefore was not in issue. The Supreme Court dismissed the bill as to the taxpayers who had been joined as not being necessary or proper parties and granted the relief prayed. In that case the Supreme Court speaking by Mr. Chief Justice Hughes, said: "It would be a serious matter, where a State has entered into a contract with another State, the validity of the contract not being questioned by either State, if individual citizens could delay the prompt performance which was admittedly important, not only to the complainant State but to the people of both States, merely by bringing a suit. It is not difficult to institute

suits, and contracts between States, of increasing importance as interstate interests grow in complexity, would be at the mercy of individuals, if the action of the latter, without more, unsupported by any proper averments on the part of the State itself questioning its obligations, should lead this court to stay its hand in giving the relief to which the complainant State would otherwise be entitled and of which it stood seriously in need.''

The instant case is a suit brought in the courts of Colorado against the officials entrusted with carrying out the terms of the compact. The compact is a law, a legislative act, of this state and of the United States. While not admitted to be constitutional it is presumed to be so until the contrary is clearly shown. It is said to be unconstitutional because it destroys plaintiff's vested rights. If it does so, as heretofore stated, it is unconstitutional. The issue was stated in the original opinion in this case, *La Plata Co. v. Hinderlider, supra,* in the following words: ''We think, however, the only material question presented by this record is the availability of said compact as a protection to the water officials in their violation of an existing and valid decree of the courts of this state.'' Unquestionably plaintiff has a vested right by virtue of his decree but the admission of a right does not fix its limit or extent. The fixing of such limit or extent is the sole object and function of the compact. Until the limit of the right is fixed there is no basis for a determination that it has been violated.

In the former opinion it was said: ''There is not the slightest pretense, either in this compact itself or in the proceedings leading up to it, to a decision of the question of what water Colorado owns, or what water New Mexico owns, or what their respective citizens own.'' When it was entered into the Supreme Court had spoken in Kansas v. Colorado declaring the rule for determining the right to water between conflicting state claimants to be that of equitable apportionment. The same general rule, as I read the decision, was adhered to in Wyoming

v. Colorado. Priority regardless of state lines was held to be a large if not controlling factor in determining an equitable apportionment as between two priority states but it was not laid down as law that it must be in all cases the controlling factor. That no hard and fast rule or formula can or should be laid down is indicated by the words of Justice Holmes in *New Jersey v. New York, supra,* previously refererd to. He said: "The different traditions and practices in different parts of the country may lead to varying results, but the effort always is to secure an equitable apportionment without quibbling over formulas." If a decree equitably apportions water between two states it fixes the extent of the right to its use that either state has vested or thereafter may vest in its citizens. If a compact accomplishes the same result it likewise fixes such limits. If the decree or compact, as the case may be, is valid it becomes the *standard* by which the extent of vested rights is to be measured and determined. Can we assume that the commissioners —representatives of two sovereignties—and that the General Assembly of Colorado that approved the compact resulting from their negotiations gave no consideration to conditions and factors that our highest court in opinions available to them had said are appropriate to be considered in effecting an equitable division of the waters of an interstate stream? The formal action of two sovereignties enacted by them into law and approved by the Congress of the United States surely is clothed with a presumption of good faith and validity until the contrary clearly appears.

In the *State of Rhode Island v. the State of Massachusetts,* 12 Pet. (U. S.) 657, involving a boundary dispute and the validity of a compact plead as having been a settlement of it, the court clearly analyzed the legal situation there and here existing. "When no other matter affects a boundary, a decree settles it as having been by original right at the place decreed; in the same manner as has been stated where it is settled by treaty or com-

pact; all dependent rights are settled when boundary is; 1 Ves. Sr. 448 to 450. If therefore there was an issue in this case, on the locality of the point three miles south of the southernmost point of Charles River, we should be competent to decide it; and decree where the boundary between the States was in 1629 and 1663, at the dates of their respective charters.

\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

"This however, is not a case where there is an issue on original boundary; the defendant does not rest on that fact, but puts in a plea setting up an agreement or compact of boundary between the parties while colonies, and the actual establishment of a line agreed on, run, marked, and ratified by both colonies, long possession, and a right by prescription to all the territory north of such line. This presents a case of an agreement on one side, alleged to be conclusive upon every matter complained of in the bill; on the other, to be invalid for the reasons alleged. If this matter of the plea is sufficient in law, and true in fact, it ends the cause; if not so in both respects, then the parties are thrown back on their original rights, according to their respective claims to the territory in question; by charters, or purchase from the Indians. If, then, we can act at all on the case, we must, on this state of the pleadings, decide on the legal sufficiency of the plea, if true, as on a demurrer to it; next, on the truth of its averments; and then decide whether it bars the complaint of the plaintiff, and all relief; *if it does not, then we must ascertain the fact on which the whole controversy turns.* In the first aspect of the case, it presents a question of the most common and undoubted jurisdiction of a court of equity; an agreement which the defendant sets up as conclusive to bar all relief, and the plaintiff asks to be declared void, on grounds of the most clear and appropriate cognizance in equity, and not cognizable in a court of law." (Italics mine.)

In the instant case the water officials plead as a defense compliance with the compact, a compliance with the law

of the state and of the United States. The plaintiff says in so complying they destroyed a vested right, but the determination of this fact *requires a determination of the fact on which the whole controversy rests,* namely, whether the apportionment as made is equitable in fact and this in turn requires a consideration of the extent and nature of the use and the priority of use in the state of New Mexico and none of these matters are shown in the record. The compact purports to effect an equitable apportionment. Being a law of the state it must be presumed constitutional and valid until the contrary clearly appears. It cannot be made to appear unconstitutional and invalid unless those factors that are proper and necessary for consideration in determining an equitable apportionment are before us so that we may say in the light of a knowledge of such facts that the apportionment is not equitable. *If it is inequitable* and carrying it out diminishes the extent of plaintiff's physical use of water that it would otherwise enjoy under a decree of priority of our own courts, we may well conclude then that it interferes with a vested right. But if, as is the case on the record before us, we are informed merely that the carrying out of the compact diminishes the extent of plaintiff's physical use of the water we may not conclude from that fact alone that it is inequitable. It must be inequitable in fact before a vested right will be destroyed by enforcing it because plaintiff could have no vested right in anything more than that to which Colorado was equitably entitled.

The foregoing analysis, we think, leads to the inevitable conclusion that the compact measures the extent of the use to which each state is entitled until we declare the compact void and of no effect. Not having before us in the record the facts on which the extent of use to which each state is entitled may be determined, we cannot, assuming our jurisdiction so to do if such facts were before us, invalidate it by denying it to be a defense to

our officials who are charged by the compact with carrying it into effect.

It is said, in the former opinion now adhered to, that the "litigation is between a citizen of this state and water officials who plead the compact as a justification for their failure to discharge duties and protect rights *guaranteed by the Constitution, statutes and court decrees of Colorado.*" (Italics mine.) It is then said that if such "officials can take away from one man one day's use of water *to which he is otherwise entitled,* they can take away ten days' use. If they can rotate for a week, they can rotate for a month or a year." (Italics mine.) The fallacy of such conclusions under the record in this case is that they are based on the assumption that the extent of plaintiff's rights is what he claims and what they would be if the state of New Mexico had no right in the stream. Admitting as we must a right in New Mexico to a part of the stream we cannot without apportioning her part here determine the extent of Colorado's right and the rights of her citizens in the stream. The extent of the rights of the two states in the stream having been determined by making in a lawful way an apportionment between them, that apportionment must stand as the *measure* of the right of Colorado until it is declared invalid and of no effect. Beyond the limit of her right Colorado cannot guarantee anything to her citizens by Constitution, statute or court decree.

It is suggested, as I believe without support in the record, that private rights were bartered away to New Mexico in the making of the compact. If they were, this, of course, is not due process of law. But again I ask, if New Mexico had rights in the stream how can the extent of rights in Colorado be determined until the extent of New Mexico's right also is determined? A finding of the extent of the rights in the respective states is implied in an equitable apportionment. Such an apportionment purports to have been made by the compact. The majority opinion does not make such an apportionment and

the record does not furnish the basis for so doing, but nevertheless holds that plaintiff's rights are invaded without determining what they are. A finding that A converted B's horse necessarily implies a finding that B had a right to the horse superior to A's. The law embodying the compact, if valid, determines the extent of Colorado's and therefore of plaintiff's rights. It has no other function. If it does not fulfill its only function, and the majority opinion says it does not, it has no force as a law and the compact is a scrap of paper.

It is said also that because the compact contains a provision that neither state "concedes the establishment of any general principle or precedent by the conclusion of this compact" that it contains inherent proof that the principle of equitable apportionment is repudiated. I submit that the statement is not evidence of such fact. For aught we know from the record the commissioners may have carefully considered all of the facts that the Supreme Court of the United States has said are proper for consideration in determining what is an equitable division and then made their decision thereon. But mindful of the fact that there are other interstate streams in which the two states are interested and mindful of the fact that different conditions might be found to obtain, out of an abundance of caution they might well have made the reservation that they did—that the compact should not be held between them a binding precedent as to the matters to be taken into consideration in arriving at any future compact.

Of like character is the provision in the compact that "This compact may be modified or terminated at any time by mutual consent of the signatory states and upon such termination all rights thereunder shall continue unimpaired." As pointed out the compact has become a law of the compacting states and of the United States. Rights that come into existence by virtue of the lawful use of water are property rights. If by reason of the use of water in a lawful way under the compact, for

example, by its rotation rather than by a continuous division, a more efficient use is possible and a more extensive acreage is irrigated thus creating private property rights based on a status created by law, such rights may not be destroyed by a repeal or modification of the law. Whether stated in the compact or not such result would follow, and since it would do so I fail to see how the announcement in the compact of a fundamental principle of law can invalidate the compact. If our laws of inheritance should be changed so that the widow takes a third of a deceased husband's property and their children two thirds instead of the widow taking half and their children half as under the present law, I submit that such modification of the law would not disturb the property rights of widows who have heretofore received half of their husband's estates. Neither do I believe that if it had been stated in the present law that such would be the result in the case of a repeal or modification of it that the law of inheritance would thereby be invalidated. All laws that are subject to repeal or modification are in a sense ''temporary expedients'' but it does not follow that a permanent vested property right may not come into existence by virtue of such a temporary expedient.

The opinion of the court concludes with the enumeration of seven points that it does not determine.

(1) It is said that the opinion does not hold that ''states cannot settle disputed questions by compact,'' but it does deny the right of officials to carry out a compact purporting to settle such questions when neither of the signatories thereto is questioning its validity and which, having become a law of the state, is presumptively constitutional until the contrary clearly appears, and that on a record silent as to facts from which it may be determined whether the compact is valid or invalid.

(2) It is said that the opinion does not hold ''that in so doing [Settling disputed questions by compact] they [states] cannot follow a particular rule or a combination of rules'' but it does uphold a judgment restraining the

water officials from carrying out a compact, presumptively valid, on a record barren of facts from which the court may determine what rule or combination of rules should be followed, or that it was not based on one or more of these rules or combination of rules, that it was proper to follow.

(3) It is said that the opinion does not hold "that they [states] can grant what they do not own," but the affirmance of the judgment implies a determination that Colorado had a right to make the grant to the full extent claimed by plaintiff and enforces the grant to the full extent claimed by plaintiff, on a record silent as to facts from which may be ascertained the amount of water that Colorado owned and was entitled to grant.

(4) It is said that the opinion does not hold "that if they [states] do [grant what they do not own] the grantee gets anything." The affirmance of the judgment is an implied holding that the plaintiff is entitled to the full extent of the grant claimed without determining what Colorado had a right to grant.

(5) It is said that the opinion does not hold "that they [states] cannot admit that they have made grants beyond their rights and thus nullify such grants," but it upholds a grant to the full extent that all of the water in the river will satisfy without determining whether Colorado did or did not have the power to make the grant that is upheld. It holds also by necessary implication that the .apportionment made by the compact is not in accordance with the original rights of the respective states in the stream and that its enforcement diminishes a vested right and therefore destroys it without determining the extent to which under her original right Colorado was entitled to vest rights in her citizens. It further holds by implication that plaintiff's rights were vested to the same extent as if there were no controversy or as if the interstate stream were an intrastate stream.

(6) It is said that the opinion does not hold that the "doctrine of priority is to be upheld regardless of state

lines.'' The record is silent as to whether the compact which has become a law of the state and presumptively constitutional until the contrary clearly appears is or is not based on the doctrine of priority regardless of state lines. If it was so based the opinion holds that the doctrine of priority regardless of state lines may not be upheld so far as this compact is concerned.

(7) It is said that the opinion does not hold ''that rotation which deprives an appropriator of no actual advantage is not a proper method of use'' but it does hold that rotation in this case deprived the plaintiff of an actual advantage without a determination of the extent of his rights on a proper apportionment of the use of the river as between the two states which is a condition precedent to a determination of the advantage to which he is entitled and to a determination of whether he is deprived of that to which he is entitled.

As I view the matter the following propositions of law are controlling. The major propositions are sustained directly by the cases heretofore cited. The others are necessary corollaries of the major propositions:

1. An equitable apportionment might have been made between the states by decree of the United States Supreme Court.

2. The compact apportioning water between the states is constitutional and valid if it affects an equitable apportionment.

3. The compact is a law of the states entering into it and of the United States and is presumed to be constitutional and valid until the contrary clearly appears.

4. That an apportionment is not equitable may be made to appear only (a) by a showing of all of the facts entitled to consideration before an apportionment is made; (b) by a showing that under no situation possible under the facts entitled to consideration could a physical reduction occur in the amount of water to which plaintiff is entitled if an equitable apportionment were made.

5. That the existence of the formal compact between

sovereign states purporting to settle a controversy is notice to the world that a controversy exists in the absence of such compact to the same extent as would be the case if a suit in a court of competent jurisdiction were pending between them.

6. That any dealing with the subject matter of the compact by the courts of either state in litigation between her citizens must be with full recognition of the situation of her citizens as created by the compact and that the compact binds them until facts are shown that clearly show its invalidity.

7. That an attack on a compact that stands unquestioned by the signatory sovereigns by judicial proceedings based on the ground of its invalidity as destructive of a vested right of a citizen of one of such sovereigns must disclose in the record facts sufficient for the court to determine whether, without the compact, with the matters purporting to be settled by it in controversy, the party asserting its invalidity would be entitled to enforce his right to the extent he claims, before the court can nullify the compact by restraining its enforcement.

For the reasons stated I respectfully dissent from the decision and opinion of the court.